IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DOLORES LLOYD,                    :      CIVIL ACTION
                                  :      NO. 15-6880
          Plaintiff,             :
                                  :
     v.                           :
                                  :
PRESBY'S INSPIRED LIFE, et al.,   :
                                  :
          Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 1, 2017


          This is a case of alleged unlawful discrimination and

retaliation in violation of the Fair Housing Act, 42 U.S.C.

§§ 3601-3619.  Plaintiff Dolores Lloyd ("Plaintiff"), proceeding

pro se, brings this action against Presby's Inspired Life

("Presby's"), the owner of the property where Plaintiff formerly

resided, and the property manager of the property, Fatimah Bey

("Bey," and together with Presby's, "Defendants").  Defendants

filed an answer denying the allegations, deposed Plaintiff, and

moved for summary judgment on all three claims.  Plaintiff

opposes the motion.  For the reasons discussed below, the Court

will grant in part and deny in part Defendants' motion for

summary judgment, and grant leave for Defendants to file a

second motion for summary judgment pursuant to Federal Rule of
Civil Procedure 56(f)(2)-(3).

## I. FACTUAL BACKGROUND[1]

Plaintiff is a former tenant at Interfaith House
("Interfaith"), a building owned by Defendant Presby's.  See
Second Am. Compl. at 3, 13, ECF No. 10 [hereinafter SAC].[2]
Plaintiff became a resident of Interfaith on June 4, 2009.  See
id. at 3, 6; Defs.' Mem. Law. Supp. Mot. Summ. J. at 3, ECF No.
19 [hereinafter Defs.' Mem.].  According to Plaintiff, she was
evicted from Interfaith in May 2015, see SAC at 13 ¶ 6, and left
Interfaith in June 2015, see id. at 6 ¶ 6.[3]

In her Second Amended Complaint, Plaintiff alleges
that Defendant Bey, the property manager of Interfaith,
(1) discriminated against Plaintiff because she is a Jehovah's
Witness; (2) failed to provide Plaintiff with a handicapped-

---

[1]      The facts are presented in the light most favorable to
Plaintiff, the nonmoving party.

[2]      The paragraph numbers in Plaintiff's Second Amended
Complaint are non-sequential and contain multiple repeating
numbers.  As a result, and in the interest of clarity, citations
to the Second Amended Complaint in this memorandum include both
page numbers and paragraph numbers.

[3]      Defendants acknowledge that a landlord-tenant
complaint was filed against Plaintiff on February 13, 2015, see
Defs.' Mem. at 4, and apparently Defendants introduced a copy of
that complaint as an exhibit at Plaintiff's deposition, see ECF
No. 19-6 at 1, although the landlord-tenant complaint has not
been filed of record (nor have Defendants filed the complete
transcript of Plaintiff's deposition).

accessible apartment, which Plaintiff required to accommodate her permanent physical disability; and (3) retaliated against Plaintiff after she filed religious discrimination complaints with the United States Department of Housing and Urban Development ("HUD") and the Pennsylvania Human Rights Commission ("the PHRC"). Defendants vigorously deny all of Plaintiff's allegations relating to the alleged religious discrimination, failure to accommodate Plaintiff's disability, and retaliation. See Defs.' Mem. at 3-4. However, Defendants admit that Plaintiff filed complaints with HUD and the PHRC, and they have filed copies of documentation related to those complaints. See id.

With respect to Plaintiff's religious discrimination claim, she alleges that Bey (1) prohibited Jehovah's Witnesses, including Plaintiff, from hosting religious or personal meetings in the main lobby, yard, or kitchen, while permitting tenants of other religious faiths to host such meetings; (2) required tenants to attend "mandatory" political meetings, even though the Jehovah's Witness faith prohibits participation in politics; (3) gave preferential treatment in housing to non-Jehovah's Witness tenants; and (4) refused to allow Plaintiff to leave religious information in the lobby, while allowing other non-Jehovah's Witness tenants to leave their religious information in the lobby. See SAC at 2-6. Plaintiff alleges that she asked

to hold a religious service in the main lobby in 2010 after a friend's mother passed away, and Bey refused the request. See id. at 5 ¶ 4. In contrast, Plaintiff alleges, other religious groups were permitted to hold Sunday service meetings and Bible study groups at Interfaith on a regular basis. See id. at 4 ¶ 1. Plaintiff also alleges that Bey stated over the intercom system that Plaintiff should place her religious magazines "in the trash where they belong." Id. at 6 ¶ 4.

With respect to her reasonable accommodations claim, Plaintiff alleges that she originally applied for a large one-bedroom, handicapped-accessible apartment in 2008. See id. at 2-3. According to Plaintiff, she accepted an efficiency apartment in 2009 because Bey promised Plaintiff that she would be transferred to a handicapped-accessible apartment as soon as one became available. See id. at 3 ¶ 6. Plaintiff claims that her physicians sent letters to Bey confirming Plaintiff's permanent physical disability in 2009 and 2013. See id. at 3 ¶ 4. Despite this documentation, Plaintiff claims, Bey refused to transfer Plaintiff to an accessible apartment, in part because Plaintiff is a Jehovah's Witness.[4] See id. at 3 ¶ 3.

_____

[4] In response to these allegations, Defendants assert that they never received a letter from a physician verifying that Plaintiff needed a one-bedroom, handicapped-accessible apartment. See Defs.' Mem. at 4.

According to Plaintiff, she filed complaints with HUD and the PHRC in August 2012 relating to Bey's discrimination against her.[5] See id. at 6. Plaintiff claims that following her filing of the complaints with HUD and the PHRC, Bey and other, unnamed staff members began retaliating against her. See SAC at 7 ¶ 4. According to Plaintiff, the retaliation included, inter alia, Bey and other Interfaith staff members (1) entering Plaintiff's apartment and damaging her property, including breaking Plaintiff's water heater and faucet, spreading chemicals, garbage, and feces on Plaintiff's belongings, and contaminating Plaintiff's food; (2) attempting to poison Plaintiff; (3) intercepting and stealing Plaintiff's mail and medication; and (4) sabotaging Plaintiff's application for affordable housing, causing Plaintiff to be evicted from the building. See id. at 7-14. Plaintiff claims that she sustained numerous injuries as a result of Bey's creation of unsanitary conditions in Plaintiff's apartment and attempt to poison her,

_____

[5]      Although neither complaint is part of the record in this case, HUD's letter of findings in response to Plaintiff's HUD complaint, which Defendants attach as an exhibit to their motion for summary judgment, indicates that Plaintiff's initial HUD complaint was filed on March 8, 2013. See HUD Letter of Findings at 1, Sept. 30, 2014 [hereinafter HUD Findings Letter], Defs.' Mot. Ex. C, ECF No. 19-5. Defendants have also filed the PHRC's letter response to Plaintiff's PHRC complaint, which is dated July 1, 2014. See PHRC Letter, July 1, 2014, ECF No. 15-1. The PHRC letter does not indicate when Plaintiff filed her PHRC complaint. See id.

including ring worms, breathing problems, and injuries requiring open heart surgery.  See id. at 10-11.

In May 2014, according to Plaintiff, Bey withheld documents relating to Plaintiff's application for annual recertification for a housing subsidy from HUD, and then failed to submit Plaintiff's application in a timely manner, causing Plaintiff to lose her HUD subsidy.[6]  See id. at 13 ¶¶ 1-5. Plaintiff alleges that after she lost her subsidy, Bey raised Plaintiff's rent to the full market rate, even though Bey knew that Plaintiff could pay only 30 percent of the market rate for the apartment without the HUD subsidy.  See id. at 13 ¶ 4. Plaintiff could not pay the new rental rate, and, as a result, she was evicted in May 2015.  See id. at 13 ¶ 6.

On September 30, 2014, HUD issued a Letter of Findings in response to Plaintiff's complaint alleging religious discrimination and failure to accommodate Plaintiff's disability (the "HUD Findings Letter").  See HUD Findings Letter, Sept. 30, 2014, Defs.' Mot. Ex. C, ECF No. 19-5.  In the letter, HUD stated that, following an investigation, it made a determination of no probable cause with respect to all of the allegations in

---

[6]     Plaintiff alleges that the HUD recertification process typically takes only one day.  See id. at 14 ¶ 7.  She alleges that, in May 2013, Bey's supervisor had Plaintiff sign all of the HUD recertification documents in one day, and she submitted the application to HUD that same day.  See id. at 14 ¶ 8.

Plaintiff's HUD complaint.  _See_ _id._  In response to the HUD

Findings Letter, Plaintiff submitted a timely request for

review, which HUD addressed in a final letter of determination

dated May 20, 2015 (the "HUD Final Letter").[7]  _See_ HUD Letter of

Determination, May 20, 2015, Defs.' Mot. Ex. F, ECF No. 19-8.

In the final letter, HUD noted that Plaintiff asserted that the

HUD investigator did not properly investigate the complaint and

did not talk to all of Plaintiff's witnesses.  _See_ _id._ at 3.

HUD found that, while Plaintiff did note on her initial housing

application that she had a physical disability and received

Social Security Disability Income, there was no evidence that

Plaintiff had requested a reasonable accommodation because of

her physical disability when she asked to move to a different

apartment.  _See_ _id._ at 3-4.  Instead, Plaintiff provided other

reasons that she was dissatisfied with her apartment and wanted

to move, including wanting to move to a higher floor to receive

_____

[7]      HUD's determination of no probable cause with respect
to Plaintiff's HUD complaint does not prevent Plaintiff from
bringing a civil action in this Court with respect to the same
claims.  _See_ 42 U.S.C. § 3613(a)(2) (permitting a person to
commence a civil action related to a discriminatory housing
practice whether or not a complaint has been filed with HUD "and
without regard to the status of any such complaint"); _see also_
_Turner v. Sec'y of the U.S. HUD_, 449 F.3d 536, 540 (3d Cir.
2006).

more sunlight.  See id.  Accordingly, HUD sustained the investigator's findings.[8]  Id. at 4.

On April 17, 2015, Plaintiff filed a second complaint with the PHRC, alleging that Bey retaliated against her in response to her HUD discrimination complaint.  See PHRC Compl., Defs.' Mot. Ex. E, ECF No. 19-7.  Plaintiff also filed a similar complaint with HUD on the same date.  See HUD Compl., Defs.' Mot. Ex. G, ECF No. 19-9.  Plaintiff's PHRC complaint was resolved in a letter dated August 27, 2015, in which the PHRC dismissed the complaint after finding that "the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination."  See PHRC Letter, Aug. 27, 2015, ECF No. 15-2.  The parties have not provided any information to the Court regarding the resolution, if any, of Plaintiff's April 17, 2015, HUD complaint.

## II.  PROCEDURAL HISTORY

Plaintiff filed this action on December 31, 2015.  ECF No. 1.  The Court granted in forma pauperis status on January 6, 2016, ECF No. 2, and Plaintiff's complaint was filed the same

---

[8]    It does not appear that Plaintiff challenged HUD's initial finding of no probable cause with respect to her religious discrimination complaint, as HUD's final letter of determination solely discusses Plaintiff's allegation that Defendants failed to accommodate her disability.  See id.

day, ECF No. 3.  Plaintiff filed an amended complaint on
February 6, 2016.  ECF No. 4.

On April 25, 2016, Defendants filed a motion for a
more definite statement.  ECF No. 7.  On May 17, 2016, Plaintiff
filed a motion for leave to file another amended complaint.  ECF
No. 9.  Following a hearing on Plaintiff's motion for leave to
file the Second Amended Complaint, the Court granted Plaintiff's
motion.  ECF No. 13.  The Court also ordered Defendants to file
a response to the Second Amended Complaint, take Plaintiff's
deposition, and file a motion for summary judgment.  See id.  In
the same order, the Court stated that it would construe
Plaintiff's Second Amended Complaint to allege three causes of
action: (1) religious discrimination; (2) retaliation; and
(3) failure to accommodate Plaintiff's disability.  See id. at 1
n.1.

On August 12, 2016, Defendants filed a motion for
summary judgment.  ECF No. 19.  On August 26, 2016, the Court
held a status conference to determine what discovery Plaintiff
would need to respond to Defendants' motion for summary
judgment.  ECF No. 20.  Following that conference, the Court
ordered Defendants to provide to Plaintiff: (1) a list of all
tenants who were evicted after their HUD subsidiary re-
certification materials were not timely submitted between the
date of Plaintiff's eviction and one year prior to that date;

and (2) a copy of Plaintiff's most recent HUD subsidiary re-certification documents.[9]  See ECF No. 21.  The Court also set deadlines for the filing of Plaintiff's opposition to Defendants' motion for summary judgment and Defendants' reply in further support of their motion for summary judgment, and permitted Plaintiff to file a flash drive in support of her claims.  See id.

Plaintiff filed an opposition to Defendants' motion for summary judgment on October 6, 2016, together with a flash drive containing several video files.  ECF No. 22.  Defendants have not filed a reply.  The Court is now ready to rule on the motion.

## III.  LEGAL STANDARD

Summary judgment is awarded under Federal Rule of Civil Procedure 56 when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott

---

[9]      Neither party has filed these materials with the Court in connection with Defendants' motion for summary judgment or Plaintiff's opposition thereto.

10

Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views all facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party, who must "set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 250.

A document filed pro se is to be "liberally construed" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  In addition, when considering a motion in a pro se plaintiff's

proceedings, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999). However, on a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Ray v. Fed. Ins. Co., No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007) (Robreno, J.). "[M]erely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (Robreno, J.).

## IV. DISCUSSION

Pursuant to the Court's June 13, 2016, order, Defendants have construed Plaintiff's Second Amended Complaint to allege three causes of action under the Fair Housing Act, 42 U.S.C. §§ 3601-3619: (1) failure to accommodate Plaintiff's disability; (2) religious discrimination; and (3) retaliation. In their motion for summary judgment, Defendants argue that each of these three causes of action fails as a matter of law. See Defs.' Mem. Defendants also argue that the statute of limitations bars Plaintiff's religious discrimination claim to

the extent that claim is based on events that occurred in 2010. See id. at 9.

A.     Failure to Accommodate

The Fair Housing Act ("FHA") prohibits housing discrimination on the basis of, inter alia, race, gender, and national origin.  See 42 U.S.C. §§ 3601-3619.  The FHA applies to all dwellings, including privately owned dwellings such as the one at issue in this case.  In 1988, Congress passed the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601, which extended the coverage of the FHA to include people with disabilities.  See 42 U.S.C. § 3604(f)(2) (making it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap").  Discrimination is defined to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

In the Third Circuit, a court evaluating an FHAA reasonable accommodations claim considers three factors: "whether the requested accommodation is '(1) reasonable and (2) necessary to (3) afford handicapped persons an equal

opportunity to use and enjoy housing.'" Lapid-Laurel, LLC v. Zoning Bd. of Adjustment, 284 F.3d 442, 457 (3d Cir. 2002) (quoting Bryant Woods Inn, Inc. v. Howard Cnty., 124 F.3d 597, 603 (4th Cir. 1997)). A "plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling." Id. If the plaintiff succeeds, "the burden shifts to the defendant to show that the requested accommodation is unreasonable." Id. Accordingly, in order to evaluate a motion for summary judgment on a reasonable accommodations claim, a court must "determine whether there is a genuine issue of material fact regarding (1) whether the accommodations that [the plaintiff] requested were necessary to afford handicapped persons an equal opportunity to use and enjoy housing; and, if so (2) whether the accommodations requested were unreasonable." Id. at 459.

Here, Plaintiff alleges that Defendants failed to move her to a one-bedroom, handicapped-accessible apartment, which Plaintiff claims she needed to accommodate her permanent physical disability. See SAC at 2-4. Plaintiff alleges that two of her physicians sent letters to Defendants to confirm her disability, in 2009 and again in 2013. See id. at 3 ¶ 4.

Defendants argue that Plaintiff cannot demonstrate that Defendants have failed to reasonably accommodate her

disability as a matter of law.  See Defs.' Mem. at 6.
Defendants claim that they did not fail to make the requested
accommodation because they never received a verification from
Plaintiff's doctor that accommodation was necessary.  See id.
According to Defendants, Plaintiff admits that she never saw the
alleged verification.  See id.  Defendants conclude that because
Plaintiff cannot show that they were aware of the physician's
verification, judgment should be entered in their favor on this
count.  See id.

        In support of the assertion that they never received a
physician's verification that Plaintiff needed a one-bedroom
accessible apartment, Defendants cite the HUD Findings Letter,
in which HUD stated that "[t]he Respondents did not receive a
doctor's note or verification that the Complainant needed a one-
bedroom accessible apartment."  HUD Findings Letter at 7, ECF
No. 19-5.  Defendants also cite Plaintiff's deposition, in which
Plaintiff admitted that she had never seen a copy of the letter
she alleges her physician sent to Defendants in 2013.  See Lloyd
Dep. at 42:8-12, ECF No. 19-6.

        In response to Defendants' motion for summary
judgment, Plaintiff argues that, even if Defendants never
received a letter from her physician, Defendants did receive the
HUD Findings Letter, which reported the statements of
Plaintiff's physician.  See Pl.'s Opp. Defs.' Mot. Summ. J.

[hereinafter Pl.'s Opp.] at 3, ECF No. 22.  Plaintiff points out that, as reported in the HUD Findings Letter, her physician stated that Plaintiff would benefit from a large one-bedroom accessible apartment to carry out her daily activities, that it would be safer and easier for Plaintiff to get around, and that Plaintiff would be less likely to fall.  See id.  As a result, Plaintiff contends, she needed the one-bedroom accessible apartment to accommodate her disability.  See id.

To the extent Plaintiff argues that, in absence of a verification from Plaintiff's doctor, the HUD Findings Letter should have put Defendants on notice that she required a one-bedroom accessible apartment to accommodate her disability, Plaintiff ignores HUD's ultimate finding that she did not need that accommodation.  Specifically, HUD found that "[t]he investigation revealed that the requested accommodation was not necessary to accord [Plaintiff] an equal opportunity to use and enjoy the dwelling," because Plaintiff "does not use a wheelchair and does not require the features of an accessible apartment."[10]  HUD Findings Letter at 7.  HUD also stated that

_____

[10]     The investigation included contact with Plaintiff's physician, who informed the HUD investigator that Plaintiff has a permanent physical disability.  See id. at 5.  As a result of this disability, according to the physician, Plaintiff has difficulty rising from a sitting position and ambulating, is unsteady on her feet and susceptible to falling down, and requires objects to hold on to while moving.  Id.  As a result, the physician informed HUD, Plaintiff needed a one-bedroom

"[Plaintiff]'s physician failed to explain how [Plaintiff's] disability requires the specific features of an accessible unit." Id. at 5.

Therefore, as Defendants correctly point out, there is no evidence in the record that they received a medical verification of Plaintiff's disability in connection with Plaintiff's request for reasonable accommodations. According to Defendants, Plaintiff's failure to establish that she provided a physician's verification of her disability is fatal to her claim. Defendants argue that they cannot have failed to accommodate Plaintiff's disability in violation of the Fair Housing Act because "they never received the proper request for an accommodation in the first place." Defs.' Mem. at 6.

Although Defendants do not cite any cases in support of their argument, they are correct that a plaintiff bringing a reasonable accommodations claim must establish that she made a request for a reasonable accommodation prior to the defendant's refusal. As the Third Circuit recently explained, "[f]or a housing provider's action to be considered a 'refusal' under the Fair Housing Act, the provider must have had a prior 'opportunity to accommodate.'" Revock v. Cowpet Bay West Condominium Ass'n, Nos. 14-4776 & 14-4777, 2017 WL 1192202, at

---

accessible apartment because she "needs more space for her own safety and ease to move around and to carry out her activities." Id.

*10 (3d Cir. Mar. 31, 2017) (quoting Taylor v. Harbour Pointe

Homeowners Ass'n, 690 F.3d 44, 49 (2d Cir. 2012)).  For example,

"a housing provider may have an opportunity to accommodate

because a plaintiff petitions for an accommodation or declares

that she is entitled to it."  Id. (citing Castillo v. Condo.

Ass'n v. United States HUD, 821 F.3d 92, 95, 98 (1st Cir.

2016)).

Here, however, Defendants do not claim that Plaintiff

did not request a one-bedroom accessible apartment to

accommodate her disability.[11]  Instead, Defendants contend that

Plaintiff's request was not "proper" because it did not include

medical verification of her disability.  Defendants have not

cited any legal support for their argument that a plaintiff must

establish that she submitted medical proof of her disability

prior to a defendant's refusal to accommodate, and there do not

appear to be any cases discussing the issue in this circuit.

Instead, the Third Circuit analysis of a reasonable

accommodations claim focuses on whether or not the accommodation

was in fact reasonable and necessary to afford handicapped

---

[11]     The HUD Final Letter stated that the HUD investigator
found that, in all of Plaintiff's requests to move apartments,
she provided reasons other than her disability for wanting a
different apartment.  See HUD Final Letter at 3-4.  However,
Plaintiff asserts that she did request a one-bedroom accessible
apartment for her disability, and Defendants do not argue that
the HUD Findings Letter establishes that Plaintiff did not
actually request the apartment to accommodate her disability.

18

persons an equal opportunity to use and enjoy housing, not whether or not a plaintiff provided proof of such in connection with her request.[12] Defendants do not claim that there is not a disputed issue of fact regarding whether or not Plaintiff actually required a one-bedroom accessible apartment; they argue only that Plaintiff has not established that she submitted medical verification.

According to a joint policy statement issued by HUD and the Department of Justice, a housing provider may, in response to a request for a reasonable accommodation, "request reliable disability-related information that is (1) necessary to verify that the person meets the Act's definition of disability (i.e., has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested

---

[12] In other circuits, a plaintiff must show that the defendant knew or should have known of the plaintiff's disability. For example, in Castillo Condominium Ass'n, which the Third Circuit cited in Revock, the First Circuit stated that plaintiff must show (1) that he is a person with a disability, (2) that the defendant knew or should have known that he was a person with a disability, (3) that the accommodation was reasonable and necessary to afford the plaintiff an equal opportunity to use and enjoy his dwelling, and (4) that the defendant nonetheless refused to provide a reasonable accommodation. See 821 F.3d at 98. That test would not necessarily foreclose Plaintiff's claim here, however, as her initial rental application noted that she had a physical disability and received Social Security Disability Income. See HUD Final Letter at 2-3.

accommodation." Joint Statement of HUD & Dept. of Justice,
Reasonable Accommodations under the Fair Housing Act, 13 (May
17, 2014),
https://www.hud.gov/offices/fheo/library/huddojstatement.pdf
[hereinafter Joint Statement].

The most charitable interpretation of Defendants'
argument is that, after Plaintiff requested the accommodation,
Defendants responded with a request for medical verification, as
they are entitled to do, which Plaintiff then did not provide.
As a result, Defendants were not afforded an opportunity to
fulfill Plaintiff's request for reasonable accommodation.
However, Defendants have not established the absence of a
genuine dispute of material fact with respect to their argument.

Although Plaintiff has no evidence that she provided
medical verification, Defendants themselves have provided no
evidence that they requested such verification. Instead,
Defendants appear to argue that Plaintiff was required to submit
medical verification in support of her initial request;
otherwise, it was not a "proper" request, and Defendants could
refuse to respond or summarily deny it. That concept has no
support in the case law or in the Joint Statement, which
explains that the Act "does not require that a request be made
in a particular manner or at a particular time," and instead
must simply be made "in a manner that a reasonable person would

20

understand to be a request for an exception, change, or adjustment to a rule, policy, practice, or service because of a disability." Joint Statement at 10. While the HUD Final Letter stated that the HUD investigation revealed that Plaintiff never tied her request for another apartment to her disability, Plaintiff asserts that she did, and Defendants do not argue that the HUD Final Letter entitles them to judgment as a matter of law regarding the disputed issue of whether or not Plaintiff tied her request to her disability.

If Defendants had established that they responded to Plaintiff's request with their own request for medical verification, and that Plaintiff never provided it, they may have been entitled to judgment as a matter of law. Without any evidence that Defendants asked Plaintiff for verification, however, Defendants have failed to meet their burden to demonstrate the absence of a genuine dispute of material fact regarding Plaintiff's reasonable accommodations claim. See, e.g., Revock, 2017 WL 1192202, at *11 (reversing district court order granting summary judgment for the defendant housing provider after finding that there was a disputed issue of material fact regarding whether the defendant was given the opportunity to accommodate the plaintiffs' request for reasonable accommodation). As a result, the Court will deny

Defendants' motion for summary judgment with respect to Plaintiff's reasonable accommodations claim.

B.  Religious Discrimination

The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . religion." 42 U.S.C. § 3604(b).  Plaintiffs alleging a violation of § 3604 may bring either a disparate treatment claim or a disparate impact claim.  See Cmty. Servs. v. Wind Gap. Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2015).  Plaintiff's religious discrimination claim in this case, in which she alleges that Bey treated her differently from other tenants because of her religion, is primarily a disparate treatment claim.[13]

"[T]o prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." Wind Gap. Mun. Auth., 421 F.3d at 177.  "The discriminatory purpose need not be malicious or invidious, nor need it figure in 'solely,

---

[13]    Plaintiff's allegation that Bey required all tenants to attend meetings, which Plaintiff claims involved political discussions, see SAC at 5 ¶¶ 1-3, is a disparate impact claim. Plaintiff alleges that the Jehovah's Witness faith prohibits its members from attending political meetings.  See id. at 5 ¶ 2. As a result, a rule requiring all tenants to attend political meetings – while facially non-discriminatory - would have a disparate impact on Jehovah's Witnesses.

primarily, or even predominantly' into the modification behind the challenged action." Id. (quoting Cmty. Hous. Trust v. Dep't of Consumer & Regulatory Affairs, 257 F. Supp. 2d 208, 225 (D.D.C. 2003)). Rather, "[t]he plaintiff is only required to show that a protected characteristic played a role in the defendant's decision to treat her differently." Id. (quoting Cmty. Hous. Trust, 257 F. Supp. 2d at 225).

In evaluating a defendant's motion for summary judgment on a disparate treatment claim, a court's "task is to determine whether, upon viewing all of the facts and reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the [defendant] intentionally discriminated against the plaintiff." Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987).

According to Defendants, Plaintiff's religious discrimination claim solely encompasses one alleged incident: Plaintiff's allegation that Bey discarded Plaintiff's religious literature that Plaintiff sought to leave in the public areas of Interfaith, while allowing other tenants' religious materials to remain. See Defs.' Mem. at 7. Defendants argue that Plaintiff admitted at her deposition that she has never actually seen Bey discard Plaintiff's religious materials, and that Plaintiff has no proof that Bey ever removed Plaintiff's materials. See id.

Therefore, according to Defendants, Plaintiff is unable to show that Defendants discriminated against her on the basis of religion.  See id.

Defendants oversimplify Plaintiff's religious discrimination claim.  As an initial matter, Plaintiff does not allege that Bey discarded Plaintiff's religious materials, but instead that Bey told Plaintiff to discard them.  See SAC at 6 ¶¶ 4-5.  Plaintiff also alleges, more broadly, that Bey permitted other tenants to leave their religious materials in public spaces at Interfaith, while prohibiting Plaintiff from doing the same.  See id. at 6 ¶¶ 4-6.  Further, and more importantly, Plaintiff alleges that Bey discriminated against her and other Jehovah's Witnesses in several other ways, including that Bey (1) did not allow Plaintiff and other members of the Jehovah's Witness faith to host religious and personal meetings in public spaces at Interfaith, but allowed members of other religious faiths to host meetings; (2) gave preferential treatment in housing selection to non-Jehovah's Witness tenants; and (3) required all tenants to attend political meetings, which disparately impacted Jehovah's Witnesses, as they are prohibited from attending political meetings.  See id. at 4-6.

Defendants do not argue that there are not genuine issues of material fact with respect to any of Plaintiff's allegations, aside from Plaintiff's allegation regarding the

discarded religious magazines.  Instead, Defendants limit their motion to arguing that Plaintiff has no evidence that Bey discarded Plaintiff's religious materials.  As a result, based solely on the arguments in Defendants' papers, Defendants have failed to meet their burden to demonstrate that there is no genuine issue of material fact with respect to Plaintiff's religious discrimination claim.

Defendants also argue that the statute of limitations bars Plaintiff's religious discrimination claim, to the extent that the claim is based on events that occurred prior to March 8, 2011.  See Defs.' Mem. at 9.  Defendants argue that the Fair Housing Act has a two-year statute of limitations, 42 U.S.C. § 3613(a)(1)(A), and Plaintiff did not file her HUD complaint until March 8, 2013.  See id.  Specifically, Defendants argue that Plaintiff's allegations regarding not being allowed to use the lobby for a religious service in 2010 are outside of the limitations period.  They also argue that this is an isolated incident and should not be considered part of a continuing unlawful practice which continued into the statute of limitations period.  See id.

The Fair Housing Act's statute of limitations provision states that an action must be filed in the appropriate federal or state court "not later than 2 years after the occurrence or the termination of an alleged discriminatory

housing practice." 42 U.S.C. § 3613(a)(1)(A). The Act also contains a tolling provision for administrative actions, stating that "[t]he computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." Id. § 3613(a)(1)(B).

Plaintiff filed this action on December 31, 2015. ECF No. 1. Ordinarily, she would be barred from bringing a religious discrimination claim based on events that occurred prior to December 31, 2013. However, she filed her initial housing complaint with HUD on March 8, 2013, which tolled the time for her to file an action in federal court. HUD's final letter of determination regarding that complaint is dated May 20, 2015. Plaintiff also filed a second HUD complaint on April 17, 2015, and there is no information in the record regarding the resolution of that complaint. Therefore, Plaintiff's time to file an action was tolled beginning March 8, 2013, until at least the date that Plaintiff filed this action. Accordingly, Defendants are correct that Plaintiff was entitled to include claims in this action relating to events that occurred, at the earliest, on March 8, 2011.

As a result, the Court will grant partial summary judgment for Defendants on Plaintiff's religious discrimination

claim to the extent that claim is based on events that occurred prior to March 8, 2011.[14]

C.    Retaliation

Under the Fair Housing Act, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted protection by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. HUD has issued regulations further defining conduct that is unlawful under that section of the FHA. See 24 C.F.R. § 100.400. Pursuant to those regulations, unlawful activity includes (1) "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act," 24 C.F.R. § 100.400(c)(5), and (2) "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority," id. § 100.400(c)(6).

---

[14]    The Court notes that Plaintiff's religious discrimination claim relates primarily to events that occurred in 2012 and 2013, which are not time-barred. In particular, Plaintiff alleges that she was not permitted to leave her religious materials in the lobby after she filed her HUD complaint in August 2012, and that she was required to attend political meetings during the 2012 presidential election campaign. Plaintiff also alleges that she was continually denied her requests to move to a different apartment, in part because of her religion, including in response to a request she made in 2013.

To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.  See Madison v. Phila. Hous. Auth., No. 09-3400, 2010 WL 2572952, at *3-4 (E.D. Pa. June 23, 2010) (citing Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001)).

In their motion, Defendants assert that the protected activity Plaintiff alleges is her filing of complaints with HUD and the PHRC in August 2012, and that the adverse actions Plaintiff alleges are (1) Bey's vandalism of Plaintiff's apartment; and (2) Defendants' filing of the February 13, 2015, landlord-tenant action.  See Defs.' Mem. at 8.  Defendants then argue that Plaintiff's claim fails as a matter of law because she is unable to demonstrate a causal link between her protected activity and Defendants' alleged adverse actions.  See id.

Defendants do not argue that Plaintiff's filing of the HUD and PHRC complaints is not protected activity.  Nor do they argue that there is not a genuine issue of material fact with respect to whether they took adverse action against her. Indeed, Defendants "vigorously deny" that the vandalism occurred, and they do not refute Plaintiff's claim that Bey failed to properly fill out Plaintiff's HUD paperwork.  See id. Instead, the sole basis for Defendants' motion for summary

judgment is that Plaintiff has not demonstrated, and cannot demonstrate, a causal link between the protected activity and the alleged adverse actions. See id. at 8-9.

### 1.   Vandalism

First, Defendants argue that the alleged vandalism cannot constitute an adverse action for purposes of Plaintiff's retaliation claim, because Plaintiff alleges that the vandalism was ongoing throughout her residency at Interfaith, and Plaintiff's residency began prior to the time she filed the HUD and PHRC complaints, which are the alleged protected activity. See Defs.' Mem. at 8. As Plaintiff alleges that the vandalism began prior to the filing of her HUD and PHRC complaints, Defendants argue, the vandalism could not have been retaliation for Plaintiff's filing of the complaints – i.e., Plaintiff cannot establish a causal link between the alleged protected activity and the adverse action. See id.

Defendants again misconstrue Plaintiff's allegations. Plaintiff does allege that the vandalism of her apartment began "[p]rior to my filing complaints with HUD and the HRC." SAC at 7 ¶ 2. Specifically, Plaintiff alleges that the vandalism started in response to Plaintiff's failure to attend Bey's "political meetings." Id. Plaintiff alleges that after she filed the HUD and PHRC complaints, the vandalism became worse.

Id. at 7 ¶ 4.  In other words, while she does allege ongoing antagonism that began prior to the protected activity, she alleges that the antagonism increased – and new events occurred – after the protected activity.

Defendants do not cite any cases supporting their assertion that a retaliation claim cannot be based on ongoing antagonism that begins prior to the allegedly protected activity and increases after the protected activity.  In addition, Defendants do not provide any reason why specific incidents that Plaintiff alleges occurred after she filed her HUD and PHRC complaints, standing alone, could not be the basis of a retaliation claim.

In the employment context, where a plaintiff has alleged ongoing antagonism, courts have granted motions for summary judgment where nothing in the record showed that the antagonism towards the plaintiff was "markedly different" before and after filing a complaint.  Randler v. Kountry Kraft Kitchens, No. 11-0474, 2012 WL 6561510, at *12 (M.D. Pa. Dec. 17, 2012) (granting summary judgment on retaliation claim where jokes and remarks the plaintiff experienced after filing a sexual harassment complaint were not markedly different from the incidents the plaintiff experienced prior to the complaint).  For example, in a case where a plaintiff was terminated following the filing of a discrimination complaint, the Third

Circuit affirmed an order granting summary judgment for the defendant where none of the events after the filing of a complaint demonstrated a "qualitatively different relationship" from the tense relationship that existed prior to the filing of the complaint.  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 234 (3d Cir. 2007).

Here, Plaintiff alleges that the vandalism of her apartment increased in intensity, and included new and different forms of vandalism, after she filed her HUD and PHRC complaints. According to Plaintiff's allegations and testimony, Bey's behavior was "markedly different" after she filed her complaints.  Therefore, based on the sole argument Defendants make – that even if the alleged vandalism did occur, it "could not be considered retaliation" because it was "ongoing from the start," Defs.' Mem. at 8 – Defendants have failed to demonstrate that they are entitled to summary judgment with respect to Plaintiff's retaliation claim.

### 2.   HUD Recertification Paperwork

With respect to the landlord-tenant action, Defendants state that Plaintiff alleges that Bey conspired to evict Plaintiff by failing to properly fill out Plaintiff's HUD recertification paperwork in May 2014.  See Defs.' Mem. at 8. Defendants point out that Plaintiff was granted a

recertification in May 2013 – after Plaintiff's filing of a HUD
complaint against Defendants - and argue that "[i]t strains
logic to believe that the Defendant would have done the
recertification correctly in the immediate aftermath of the HUD
complaint, but then decided to retaliate over a year after the
initial complaint." Id. at 9. As a result, Defendants argue,
Plaintiff's filing of the HUD complaint – the alleged protected
activity - could not have caused Defendants to interfere with
Plaintiff's HUD recertification or file a landlord-tenant action
– the alleged adverse actions. See id.

As discussed above, Plaintiff must demonstrate a
causal link between her protected activity and the alleged
retaliation. A plaintiff "may rely upon a broad array of
evidence" in order to illustrate a "causal link" between
protected activity and an adverse action for purposes of
establishing retaliation. Farrell v. Planters Lifesavers Co.,
206 F.3d 271, 283-84 (3d Cir. 2000). Where the time period
between the protected activity and the alleged retaliation is
unusually close, it may be sufficient on its own to create an
inference of causation. See id. If the timing is not
"unusually suggestive," however, courts then evaluate whether
"the proffered evidence, looked at as a whole, may suffice to
raise the inference." Id. at 280 (quoting Kachmar v. SunGard
Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)).

Here, Plaintiff alleges that her protected activity
was the filing of HUD and PHRC complaints in August 2012 and
March 2013, and that Bey failed to properly fill out Plaintiff's
HUD recertification paperwork in May 2014. Therefore, at
minimum, approximately fourteen months elapsed between the
protected activity and the adverse action. That time period is
insufficient to create an inference of causation on its own.
See, e.g., Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007)
(five-month time period between complaint and allegedly adverse
action was insufficient, without more, to create an inference of
causation).

Looking at the record at the whole, there is no other
evidence put forth by Plaintiff that creates an inference of
causation. In her opposition to Defendants' motion, Plaintiff
states that defense counsel told Plaintiff that (1) Plaintiff
was the only tenant who was denied a HUD grant for a rental
subsidy because the staff did not send in her annual paperwork;
and (2) Plaintiff was the only tenant who resided at Interfaith
and qualified for a HUD grant to subsidize the rent, but was
evicted due to the rent being raised to the full market rate.[15]
See Pl.'s Opp. at 7-8. Plaintiff argues that this is evidence

---

[15]     As the Court ordered Defendants to produce this
information following the last status and scheduling conference,
it appears that Plaintiff may be summarizing the information
Defendants produced, although Plaintiff has not submitted copies
of any documents produced.

of retaliation and discrimination.  See id. at 8.  While
Plaintiff is correct that, if true, Defendants' failure to send
in her HUD paperwork in May 2014 is an adverse action, there is
simply no evidence in the record connecting that adverse action
to Plaintiff's filing of complaints with HUD and the PHRC in
August 2012 and March 2013, particularly as Plaintiff
acknowledges that that Defendants properly submitted her
paperwork in May 2013.

As a result, the Court will grant Defendants' motion
for summary judgment with respect to Plaintiff's retaliation
claim, to the extent that it is based upon Defendants' failure
to submit Plaintiff's HUD recertification paperwork.

### D.  Leave to File a Second Motion for Summary Judgment

Although Defendants have failed to meet their burden
to demonstrate that they are entitled to judgment as a matter of
law with respect to all aspects of Plaintiff's three claims, the
Court has identified potential grounds for granting Defendants'
motion that Defendants have not raised, pursuant to the Court's
authority under Federal Rule of Civil Procedure 56(f).  See Fed.
R. Civ. P. 56(f)(2)-(3) (providing that, "[a]fter giving notice
and a reasonable time to respond, the court may . . . (2) grant
the motion [for summary judgment] on grounds not raised by
party; or (3) consider summary judgment on its own after

identifying for the parties material facts that may not be genuinely in dispute").

First, with respect to Plaintiff's reasonable accommodations claim, there does not appear to be any evidence in the record that a one-bedroom accessible apartment was necessary to accommodate Plaintiff's disability.

Second, with respect to Plaintiff's religious discrimination claim, to the extent it relates to events that occurred on or after March 8, 2011, there does not appear to be any evidence in the record that (1) tenants who are not Jehovah's Witnesses were permitted to hold religious meetings in public spaces; (2) tenants who were not Jehovah's Witnesses were given preferential treatment in housing placement decisions; or (3) Defendants had a policy or practice requiring all tenants to attend political meetings and providing repercussions for tenants' failure to attend those meetings.

Finally, with respect to Plaintiff's retaliation claim on the basis of the vandalism of her apartment, there does not appear to be any evidence in the record supporting Plaintiff's allegation that the alleged vandalism, if it occurred, was caused by Defendants.

As a result, the Court will permit Defendants to file a subsequent motion for summary judgment with respect to the above issues. In addition, the Court will permit Plaintiff to

take additional limited discovery to supplement the record and identify and offer evidence in support of her claims prior to filing an opposition, if any, to Defendants' second motion for summary judgment.

**V.   CONCLUSION**

For the reasons stated above, the Court will grant in part and deny in part Defendants' motion for summary judgment. The Court will grant Defendants' motion for summary judgment with respect to (1) Plaintiff's religious discrimination claim, to the extent it relates to events that occurred prior to March 8, 2011; and (2) Plaintiff's retaliation claim, to the extent it relates to Defendants' failure to properly file Plaintiff's HUD recertification paperwork.  The Court will deny Defendants' motion for summary judgment with respect to (1) Plaintiff's reasonable accommodations claim; (2) Plaintiff's religious discrimination claim, to the extent it relates to events that occurred on or after March 8, 2011; and (3) Plaintiff's retaliation claim, to the extent it relates to the alleged vandalism of Plaintiff's apartment.  As discussed above, the Court will permit Defendants to file a second motion for summary judgment with respect to Plaintiff's surviving claims.

An appropriate order follows.